IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | | |
|---|---|---|
| ERIE INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 1:22-CV-00093-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| TROY STEPHENSON, CHRISTINA | ) | |
| STEPHENSON, AND; AND STEVEN | ) | |
| BARNETT, IN BOTH THEIR | ) | |
| INDIVIDUAL CAPACITIES AND IN ANY | ) | |
| REPRESENTATIVE CAPACITIES THEY | ) | |
| MAY HAVE RELATING TO ERIE | ) | |
| INSURANCE EXCHANGE; | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**MEMORANDUM OPINION[1]**

CYNTHIA REED EDDY, United States Magistrate Judge.

I.    **INTRODUCTION**

Presently pending before the Court is Plaintiff Erie Indemnity's ("Indemnity") Motion for

Preliminary Injunction. (ECF No. 56).  Indemnity is seeking a preliminary injunction under the

All Writs Act, 28 U.S.C. § 1651 and the Anti-Injunction Act, 28 U.S.C. § 2283 ("AIA") to enjoin

Defendants Troy Stephenson, Christina Stephenson, Steven Barnett and all those in privity with

them from pursuing the case *Erie Insurance Exchange v. Erie Indemnity Co.*, No. GD-21-014814

(Pa. Comm. Pl. Allegheny Cnty.) or any similar action and enjoin the Court of Common Pleas of

Allegheny County from conducting any further proceedings in that case.  The motion is fully

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge;
therefore the Court has the authority to decide dispositive motions, and to eventually enter final
judgment. *See* 28 U.S.C. § 636, *et seq*.

briefed and ripe for consideration. (ECF Nos. 57, 58, 60, 69).  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  For the reasons that follow, the motion for preliminary injunction is granted.

## II.    FINDINGS OF FACT[2]

The Erie Insurance Group ("Erie") is a Pennsylvania reciprocal insurance business founded in 1925 by H.O. Hirt.  Reciprocal insurance is where each policyholder, or in Erie's case, each "Subscriber," exchanges reciprocal or inter-insurance contracts with each other providing indemnity among themselves.  Erie is comprised of two key entities: "Exchange" and "Indemnity." Exchange is an unincorporated subscriber-owned reciprocal and acts as the insurer for policyholders, or Subscribers, who exchange insurance policies with each other.  Exchange has no bylaws, constitution, employees, officers or directors.   Indemnity is a Pennsylvania public corporation that manages the insurance functions and affairs for Erie's Subscribers.

The document that establishes and governs this framework between Exchange and Indemnity is the Subscriber's Agreement.  Each Subscriber signs an identical version of the Agreement through which they appoint Indemnity as "attorney-in-fact" to manage Erie's affairs and in exchange for those services, each Subscriber authorizes Indemnity to retain up to 25% of all insurance premiums as "compensation." This is referred to as a "Management Fee" and has been set at the maximum rate of 25% from 2007 through the present litigation.

Individual Subscribers, through Exchange, have on several occasions attempted to raise breach of fiduciary duty claims challenging Indemnity's decision to set the Management Fee rate at the full 25% allowed under the Subscriber's Agreement alleging that Indemnity has a conflict

---

[2]    The Court makes the following findings of fact and conclusions of law. Fed. R. Civ. P. 52(a).  Unless otherwise noted, the facts are undisputed.

of interest in setting the Management Fee and that Indemnity maximizes the Management Fee and its shareholding dividends resulting in Indemnity favoring its own financial interests over Exchange.  Because the instant motion turns on the history of those cases challenging the 25% Management Fee rate, a full description of all pertinent cases follow.

   a. <u>*Beltz v. Erie Indem. Co.*, No. 1:16-cv-179 (W.D.Pa. 2016); No. 17-2774 (3d Cir. 2017) ("*Beltz II*").</u>

On July 8, 2016, a group of Subscribers brought a putative class and derivative action in the United States District Court for the Western District of Pennsylvania, *Beltz v. Erie Indem. Co.*, No. 1:16-cv-179 (W.D.Pa. 2017).  The *Beltz II* Subscribers brought, among other claims, a direct breach of fiduciary duty claim and a breach of fiduciary duty claim purportedly on behalf of Exchange against Indemnity. The *Beltz II* Subscribers alleged, *inter alia*, that Indemnity breached its fiduciary duties for misappropriating service charges and additional fees under the Subscriber's Agreement provision that Indemnity could only withhold 25% of the premiums for its Management Fee. *Beltz v. Erie Indem. Co.*, 279 F. Supp. 3d 569, 575–78 (W.D. Pa. 2017). Specifically, service charges were levied on Subscribers who chose to pay their premiums in installments rather than in a lump sum, and the *Beltz II* Subscribers alleged that beginning in 1999, Indemnity's Board approved taking all the service charges revenue instead of keeping the charges in the Exchange. *Ibid*. The *Beltz II* Subscribers alleged that this breached the Subscriber's Agreement's 25% compensation cap. *Ibid*.  Additionally, the *Beltz II* Subscribers alleged that beginning in 2008, Indemnity and its Board transferred all revenue from "additional fees" which were collected from Subscribers for checks or other payments returned unpaid, cancellation notices and charges for reinstatement of a policy following a lapse in coverage due to non-payment, to Indemnity. *Ibid*.

The district court dismissed the breach of fiduciary duty claims holding that such claims

were barred by the applicable statute of limitations because the decision to keep the service charges and additional fees occurred in 1997, 1998 and/or 2008. *Id.* at 581–583.  In so holding, the district court rejected the *Beltz II* Subscriber's argument that the statute of limitations did not expire under the "continuing violations" doctrine because "Plaintiffs by their own allegations, knew of the wrongfulness of the decision to retain Service Charges at the time those decisions were made. Plaintiffs should have brought those claims within the applicable statute of limitations, and cannot now rely on the continuing violations doctrine as a 'means for relieving [them] from their duty to exercise reasonable diligence in pursuing their claims.' " *Id.* at 583 (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)) (alteration in original).

On appeal, the United States Court of Appeals for the Third Circuit affirmed the district court's decision holding they "forfeited their fiduciary duty claims by advancing a different argument on appeal than they did in the District Court." *Beltz v. Erie Indem. Co.*, 733 F. App'x 595, 598 (3d Cir. 2018).

### b.  *Ritz v. Erie Indem. Co.*, No. 1:17-CV-340 (W.D.Pa. 2019) ("*Ritz*")

On December 28, 2017, a Subscriber brought a putative class and derivative action in the United States District Court for the Western District of Pennsylvania in *Ritz v. Erie Indem. Co*., No. 1:17-CV-340 (W.D.Pa. 2019) ("*Ritz*").  The *Ritz* Subscriber brought, among other claims, a putative class claim for a breach of fiduciary duty and a derivative breach of fiduciary duty claim on behalf of Exchange.  Specifically, the *Ritz* Subscriber alleged that Indemnity breached its fiduciary duties to Exchange and the Subscribers "for taking excessive management fees" under the Subscriber Agreement's 25% Management Fee provision. *Ritz v. Erie Indem. Co.*, No. 1:17-CV-00340-CRE, 2019 WL 438086, at *1 (W.D. Pa. Feb. 4, 2019). It was "undisputed that Indemnity never withheld any amount exceeding 25%, but rather, Ritz argue[d] that the breach of

fiduciary duty [was] based upon Indemnity 'taking the maximum 25% Management Fee year after year without valid grounds' since 2007 to present." *Id.* (quoting *Ritz* Compl. No. 1:17-cv-340-CRE (W.D.Pa. 2017) (ECF No. 1) at ¶¶ 53, 54).

The district court dismissed the *Ritz* Subscriber's breach of fiduciary duty claim based on claim preclusion finding that the breach of fiduciary duty claims could have been brought in the *Beltz II* action because it was based upon the exact conduct: that Indemnity took excessive management fees under the Subscriber's Agreement. *Id.* at *4. The Court explained:

> [B]oth cases detail an alleged scheme by Indemnity and its Board to favor shareholders over the subscribers by allegedly violating the 25% compensation cap mandated by the Subscriber's Agreement. The *Beltz II* plaintiffs narrowly tailored their causes of action by focusing on whether it was a breach for Indemnity and its Board to keep extra-contractual payments which exceeded the 25%, while Ritz broadly alleges that Indemnity and the Board exceeded the 25% compensation cap by unreasonably taking the maximum allowable percentage. Both cases allege that this scheme began at the same time, that it breaches the same provision of an identical Subscriber's Agreement and allegedly caused damages to the same putative class. Both Ritz and the *Beltz II* plaintiffs allege that Indemnity abused its attorney-in-fact position and the Board members abused their positions of power to misappropriate management fees to favor Indemnity's shareholders by deliberately breaching the same contractual provision – the compensation cap in the Subscriber's Agreement – and seek that those funds be returned to the Exchange as damages for the alleged breach. Ritz simply propounds a broader theory of recovery than that sought by the *Beltz II* plaintiffs. Ritz's complaint does not include any new material facts that occurred after the filing of the *Beltz II* complaint such that the *Beltz II* plaintiffs could not have known about the theory of recovery touted by Ritz here. Because proposing a different theory of recovery based upon the same liability causing conduct does not entitle a plaintiff to another proverbial bite at the apple, Ritz's complaint is claim precluded.

*Id.* at *4. Moreover, the Court found that the *Ritz* Subscriber's claims were further claim precluded because the conduct specifically complained of in the *Ritz* complaint was actually included in the *Beltz II* complaint,[3] and because the *Beltz II* plaintiffs were capable of including *Ritz*'s cause of

---

[3]    *See Ritz*, 2019 WL 438086, at *5 comparing *Beltz II* Complaint ("since at least 2007, Indemnity has retained the maximum amount of 25% allowed by the Subscriber's Agreement of all premiums written or assumed by Exchange. . . [and] has repeatedly taken the full amount

action for the excessive retention of Management Fees, these were the "same causes of action" for claim preclusion purposes.  The Court therefore dismissed the *Ritz* Subscriber's fiduciary duty claims with prejudice on February 4, 2019. *Id*. at \*6.  The *Ritz* judgment was not appealed.

      c.   <u>*Erie Ins. Exchange v. Erie Indem. Co.*, No. GD-21-014814 (Pa. Comm. Pl. Allegheny Cnty.); No. 2:22-cv-166-CRE (W.D.Pa. 2022) (the "State Court Action")</u>

On December 8, 2021, another group of individual Subscribers initiated an action in the Court of Common Pleas of Allegheny County as trustees ad litem for the Exchange alleging two causes of action for breach of fiduciary duty alleging that "since December 10, 2019" Indemnity breached its fiduciary duty to the Exchange "by charging Exchange an annual 'Management Fee' which is used not to cover the costs of serving as the attorney-in-fact and managing agent for Exchange" but is provided to a minority group of shareholders for their personal gain. (ECF No. 57-1 at ¶ 10).  The individual Subscribers allege that Indemnity set the Management Fee rate at 25% for both December 2019 and December 2020 and that Indemnity's Board has a conflict of interest in setting the rate, because it maximizes the Management Fee to generate excess profits for the shareholders in detriment to the Exchange. *Id*. at ¶¶ 46-47.  Exchange limits the time frame for this conduct and only includes allegations that Indemnity set the Management Fee rate at 25% in December 2019 and December 2020 and does not include any information regarding Indemnity's decision to set the Management Fee at 25% prior to December 2019.

Indemnity removed the case to this Court, which Plaintiffs moved for remand.  This Court granted Plaintiff's motion to remand, which was affirmed by the United States Court of Appeals

---

allowable pursuant to the Subscriber's Agreement") with *Ritz* Complaint (Indemnity "has retained the maximum amount of Management Fees allowed by the Subscriber's Agreement – 25% of all premiums written or assumed by the Exchange . . . and have abused their position of trust by charging and keeping excessive Management Fees.") (emphasis in original omitted).

for the Third Circuit and the United States Supreme Court denied certiorari. *Erie Ins. Exch. by Stephenson v. Erie Indem. Co.*, 68 F.4th 815, 817 (3d Cir. 2023), *cert. denied sub nom. Erie Indem. Co. v. Erie Ins. Exch.*, No. 23-434, 2024 WL 759808 (U.S. Feb. 26, 2024).  After the expiration of all federal appeals, the Court remanded this case to the Court of Common Pleas of Allegheny County, Pennsylvania on February 28, 2024. *See Erie Ins. Exch. v. Erie Indemn. Co.*, No. 2:22-cv-166-CRE (W.D.Pa. 2022) Order of Feb. 28, 2024 (ECF No. 64).

     d.  <u>*Erie Indem. Co., v. Troy Stephenson*, No. 1:22-CV-93 (W.D.Pa. 2022) (the "AIA Action")</u>

On March 15, 2022, Indemnity filed the instant action against the State Court Action Plaintiffs, Troy Stephenson, Christina Stephenson and Steven Barnett in their individual capacities and in any representative capacities they may have relating to Exchange, seeking injunctive relief pursuant to the All-Writs Act and the AIA.  The present AIA action seeks to enjoin the State Court Action filed in December 2021 by those individuals, who have purported to act on behalf of Exchange.  Presently pending before the Court is a motion for preliminary injunction by Indemnity.

### III.    STANDARD OF REVIEW

     a.  <u>Preliminary Injunction</u>

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citations omitted). In determining whether a preliminary injunction should be granted, a district court must consider:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011) (citations omitted).

In determining "success on the merits," it is enough for the movant to show that it is likely to succeed on at least one claim to issue injunctive relief. *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 590 (W.D. Pa. 2009).  In determining "irreparable harm," the movant must show a clear showing of immediate irreparable injury that is so unusual that money cannot compensate for the harm, as "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988).

A plaintiff must produce evidence sufficient to prove all four factors for a court to issue preliminary injunctive relief. *The Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000); *New Jersey Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir. 1995) (citation omitted). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

> b.   Anti-Injunction Act, 22 U.S.C. § 2283 and All-Writs Act, 28 U.S.C. § 1651(a)

Indemnity brings this action under the "relitigation exception" of the Anti-Injunction Act, 22 U.S.C. § 2283 ("AIA").  The AIA provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.  The AIA "is an absolute prohibition against [federal courts] enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 286 (1970).  The AIA "exceptions are narrow and are not to be enlarged by loose statutory construction." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (citations, quotation marks and brackets omitted).

Where, as here, the injunction sought is not "expressly authorized by Act of Congress," the state court proceedings can only be enjoined if it is necessary "in aid of [the federal court's] jurisdiction" or "to protect or effectuate [a federal court's] judgments." 28 U.S.C. § 2283; *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 364 (3d Cir. 2001). The provision for "allowing injunctions that are necessary 'to protect or effectuate [a court's] judgments' is also known as the 'relitigation exception' to the Anti Injunction Act." *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d at 364 (citation omitted). "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to, and decided by, the federal court." *Chick Kam Choo*, 486 U.S. at 147. The relitigation exception "is founded in the well-recognized concepts of res judicata and collateral estoppel." *Id.* The "essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings [must] actually have been decided by the federal court." *Id.* at 148.

"The Supreme Court has therefore urged that courts proceed with caution when considering issuing an injunction under the Anti-Injunction Act. 'A federal court does not have inherent power to ignore to limitations of §2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear.' " *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 364 (3d Cir. 2001) (quoting *Atlantic Coast Line R.R. Co.*, 398 U.S. at 294). While the "to protect or effectuate its judgments" language is "admittedly broad," it implies "that some federal injuncti[ve] relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. Co.*, 398 U.S. at 295.

Additionally, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297.

Should a federal court determine that injunctive relief is necessary, the All-Writs Act, 28 U.S.C. § 1651(a) acts in tandem with the AIA and permits the issuance of "all writs necessary or appropriate in aid of [a federal court's] jurisdiction and agreeable to the usages and principals of law[,]" including injunctive relief. 28 U.S.C. § 1651(a); *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 365 (3d Cir. 2001).

## IV.  CONCLUSIONS OF LAW

### a.  <u>Success on the Merits</u>

#### i.  *Claim Preclusion*

Indemnity argues that the State Court Action is barred by claim preclusion from the *Beltz II* and *Ritz* litigation. Because the Court agrees that Indemnity is likely to succeed on its claim preclusion argument, only that claim will be addressed.[4] *See supra Trefelner ex rel. Trefelner*, 655 F. Supp. 2d at 590.

Claim preclusion – also referred to as *res judicata* – "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276 (3d Cir. 2014). "If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. ---, ---, 140 S. Ct. 1589, 1594–95,

---

[4]   Indemnity likewise asserts issue preclusion principals in support of its action.

206 L. Ed. 2d 893 (2020) (cleaned up). "Suits involve the same claim (or 'cause of action') when they arise from the same transaction, or involve a common nucleus of operative facts." *Id.* at 1595 (internal quotation marks and citations and alterations omitted). Generally, claim preclusion "does not bar claims that are predicated on events that postdate the filing of the initial complaint[]" that "give rise to new material operative facts that in themselves, or taken in conjunction with the antecedent facts create a new claim to relief." *Lucky Brand Dungarees, Inc.*, 140 S. Ct. at 1596 (cleaned up).

Claim preclusion applies where there has been (1) a final judgment on the merits in an earlier proceeding that involved (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *Bd. of Trustees of Trucking Emps. of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). In determining whether these elements have been met, a court should "not apply this conceptual test mechanically," but rather should focus "on the central purpose of the doctrine, [which is] to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010) (internal quotations and citations omitted). In so doing, "piecemeal litigation" is avoided and the court conserves scare "judicial resources." *Id.* The underlying purpose of claim preclusion is to "relieve the parties of the cost and vexation of multiple lawsuits, ... prevent[ ] inconsistent decisions, [and] encourage reliance on adjudication." *Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (citations omitted). Importantly here, claim preclusion "bars not only claims that were brought in the previous action, but also claims that could have been brought." *Blunt*, 767 F.3d at 276. "This analysis does not depend on the specific legal theory invoked, but rather [on] the essential similarity of the underlying events giving rise to the various legal claims." *Elkadrawy v. Vanguard Grp., Inc.*, 584

F.3d 169, 173 (3d Cir. 2009) (internal citations and quotations omitted).  A "prior judgment's preclusive effect then extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit. . . . Claim preclusion similar reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Beasley v. Howard*, 14 F.4th 226, 231–32 (3d Cir. 2021) (citations omitted). In other words, claim preclusion is based upon "the essential similarity of the underlying events giving rise to the various legal claims" rather than the "specific legal theory invoked[.]" *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983–84 (3d Cir. 1984); *see accord. Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010).

### 1.  Final Judgment on the Merits

Both *Beltz II* and *Ritz* resulted in a final judgment on the merits.  *Beltz II* was dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for claim preclusion purposes constitutes a final "judgment on the merits." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981).  Additionally, the *Beltz II* fiduciary duty claim was dismissed as untimely, which is considered a final judgment on the merits. *McHale v. Kelly*, 527 F. App'x 149, 152 (3d Cir. 2013) (unpublished) (dismissal with prejudice on statute of limitations grounds is a judgment on the merits for claim preclusion purposes) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001)). *See also Elkadrawy*, 584 F.3d at 173 ("The rules of finality . . . treat a dismissal on statute-of-limitations ground . . . as a judgment on the merits.") (citation omitted).  Likewise, *Ritz* was dismissed with prejudice after having found it was barred by claim preclusion and constitutes a final judgment on the merits for claim preclusion purposes. *See Fairbank's Cap. Corp. v. Milligan*, 234 F. App'x 21, 23 (3d Cir. 2007) (unpublished)

("A dismissal 'with prejudice' is treated as an adjudication of the merits and thus has preclusive effect.") (citing *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972)).  Therefore, Indemnity has established the "final judgment on the merits" element for claim preclusion.

### 2.  Same Parties or Their Privies

The parties in the State Court Action involve the same parties and their privies as the parties in *Beltz II* and *Ritz*.  Indemnity and Exchange were parties in *Beltz II* and *Ritz* and are also parties in the State Court Action.  Further, the individual subscribers who litigated the prior action in *Beltz II* and *Ritz* are in privity with the individual subscribers in the State Court Action.

While Exchange argues that the individual subscribers change from year to year, and therefore this litigation involves different parties than those who litigated in *Beltz II* and *Ritz*, this argument entirely ignores that claim preclusion can be based upon privity. (ECF No. 58 at 14).  Privity has "traditionally been understood as referring to the existence of a substantive legal relationship, such as by contract, from which it was deemed appropriate to bind one of the contracting parties to the results of the other party's participation in litigation." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 311 (3d Cir. 2009). A "substantive legal relationship" essentially "refers to one in which 'the parties to the first suit are someone accountable to nonparties who file a subsequent suit raising identical issues.' " *McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 122 (3d Cir. 2017) (unpublished) (citing *Pelt v. Utah*, 539 F.3d 1271, 1290 (10th Cir. 2008)). *See also Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (outlining traditional nonparty preclusion categories). Privity may be found in "a variety of fiduciary, contractual or property relationship[s] between current and prior litigants." *McLaughlin*, 686 F. App'x at 122 (quoting *Pelt*, 539 F.3d at 1290). While the individual Plaintiffs in each of the cases are not identical, their substantive legal

relationship through the Subscriber's Agreement – that all individual Plaintiffs sign and are co-beneficiaries of – result in common interests in the outcome of litigation. *See Ritz*, 2019 WL 438086, at *6 (finding that all Subscribers are in privity for claim preclusion purposes because they "are all cosigners to the same Subscriber's Agreement" making them "co-beneficiaries of and cosignatories to the same contract that obligates Indemnity to provide the management services for the Exchange."). Accordingly, Indemnity has established the "same parties or their privies" element of claim preclusion.

### 3. Same Cause of Action

The "same cause of action" element is met where, regardless of the legal theory invoked, "the acts complained of were the same, . . . the material facts alleged in each suit were the same and . . . the witnesses and documentation required to prove such allegations were the same." *Athlone Industries, Inc.*, 746 F.2d at 984.

Indemnity argues that because the Court has already concluded that *Beltz II* and *Ritz* involved the same cause of action, and because the State Court Action is predicated upon the exact conduct complained of in *Beltz II* and *Ritz*, that the "same cause of action" element is met.

Indemnity is correct that *Beltz II*, *Ritz* and the State Court Action all involve the same cause of action: Plaintiffs in all three cases argue that Indemnity breached a fiduciary duty to the Subscribers and Exchange by unreasonably taking the maximum allowable percentage of 25% under the Subscriber's Agreement and favoring shareholders over the Subscribers.[5]  Exchange

---

[5]      Exchange specifically describes its cause of action in the State Court Action as follows:

> In setting the Management Fee rate at the maximum rate of 25% in December 2019 and 2020 and allowing such amounts to be taken from Exchange over the course of the last two years – in large part to fund dividend payments to [Indemnity's] shareholders – [Indemnity] breached its fiduciary duties owed to Exchange.

State Court Action Compl. (ECF No. 57-1 ¶¶ 78, 85).

Exchange specifically describes its cause of action in *Ritz* as follows:

Since at least 2007, Indemnity has retained the maximum amount of Management Fees allowed by the Subscriber's Agreement – 25% of all premiums written or assumed by Exchange – as compensation for services performed pursuant to the Subscriber's Agreement.  As described further below, Indemnity and the Board have breached their fiduciary obligations to Exchange and the Subscribers and have abused their position of trust by charging and keeping excessive Management Fees. . . . Indemnity and the Board have breached their fiduciary duties to Exchange and the Class by unlawfully diverting to Indemnity hundreds of millions of dollars of revenue that belongs to Exchange and the Class . . . by taking the maximum 25% Management Fee year after year without valid grounds.  To be sure, the conflicted and self-interested members of the Board have charged and taken grossly excessive Management Fees from the Exchange and the Subscribers and funneled the money to themselves and other Indemnity stockholders through substantial dividend payments.

. . .

Since at least 2007, Indemnity and the Directors have sought to profit at the direct expense of Plaintiff and the Class and, among other things, have authorized, taken and retained excessive Management Fees from Exchange and the Class in order to, *inter alia*, pay ever increasing dividends to the shareholder of Indemnity and thereby improve their own financial positions.  The funds used to pay the grossly excessive Management Fees taken by Indemnity and the Directors would have been used for the benefit of the Plaintiff and the Class had they not been taken by Indemnity.  Instead, Indemnity and its stockholders directly benefitted from the funds.  Indemnity and the Directors breached their fiduciary duties to Plaintiff and the Class by authorizing, enabling and/or otherwise permitting Indemnity to retain excessive Management Fees from Exchange.  As a result of Indemnity and the Director's breach of their respective fiduciary duties to Plaintiff and the Class by authorizing, enabling, and/or otherwise permitting Indemnity to retain excessive Management Fees from Exchange.

*Ritz* Compl. (ECF No. 57-2 ¶¶ 44, 53; 107-109).

Exchange specifically describes its cause of action in *Beltz II* as follows:

[S]ince at least 2007, Indemnity has retained the maximum amount of 25% allowed by the Subscriber's Agreement of all premiums written or assumed by Exchange. Indemnity has not disclosed any rationale or justification that it is entitled to the entire 25%, rather, Indemnity has repeatedly taken the full amount allowable pursuant to the Subscriber's Agreement.  The value for the services rendered by

argues that the claims in the State Court Action could not have been brought in the previous actions because the breach of fiduciary duty cause of action is limited to Indemnity's allegedly illegal conduct between 2019 and 2020 and therefore post-dated the prior two complaints, could not have been brought in the previous action and does not qualify as the same cause of action for claim preclusion purposes.  However, Exchange's attempt to limit the claims in the State Court Action to only conduct occurring between 2019 and 2020 does not defeat claim preclusion principals.  "A claim extinguished by [claim preclusion] 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose.' " *Elkadrawy*, 584 F.3d at 174 (quoting Restatement (Second) of Judgments § 24(1) (1982) (emphasis in original)).  A case decided by the United States Court of Appeals for the Third Circuit emphasizes this point: *Huck on Behalf of Sea Air Shuttle Corp. v.*

---

Indemnity, as attorney-in-fact, must be reasonable, and any amount taken in excess of that is a breach of fiduciary duty.

. . .

Beginning in or around 1997 and continuing to the present, Indemnity and the Directors deviated from 70 years of prior conduct, and authorized, enabled and/or otherwise permitted Indemnity to retain Service Charges and/or Additional Fees as compensation in addition to a percentage of all premiums written or assumed by Exchange.  The Service Charges and Additional Fees would have been used for the benefit of Plaintiffs and the Class had they not been retained by Indemnity.  Instead, Indemnity and its shareholders directly benefitted from the taking of this additional compensation.  Indemnity and the Directors breached their fiduciary duties to Plaintiffs and the Class by authorizing, enabling and/or otherwise permitting Indemnity to retain the Service Charges and Additional Fees in addition to a percentage of premiums as prescribed in the Subscriber's Agreements.  As a result of [Indemnity's] breach of [its] . . . fiduciary duties, Plaintiffs and the Class have suffered substantial damages, including, but not limited to, monetary losses stemming from Indemnity's unlawful retention of the revenue generated by the Service Charges and Additional Fees.

*Beltz II* Compl. (ECF No. 57-3 ¶¶ 84; 127-130).

*Dawson*, 106 F.3d 45 (3d Cir. 1997).

In *Huck*, the plaintiff who owned or operated seaplanes brought suit against the Virgin Islands Port Authority ("VIPA") after VIPA's refusal to allow plaintiff to use VIPA seaplane ramps. 106 F.3d at 47. The district court entered summary judgment in favor of VIPA and plaintiff did not appeal that order. *Id.* Instead, plaintiff filed a second action against VIPA and various Virgin Island government and VIPA officials based on the same conduct alleged in the original complaint and contended he could file the second suit because VIPA's continued refusal to allow access to the seaplane ramps drove his company into bankruptcy. *Id.* The district court held that plaintiff's claims were barred by claim preclusion, finding that plaintiff's claims "arose out of the same transaction and events that gave rise to the earlier lawsuit, and that the same had been earlier adjudicated." *Id.* The district court further held that plaintiff "could not avoid the effects of [claim preclusion] simply because he was now asserting a different degree or extent of damage than earlier alleged [and t]he fact that he continued to suffer from the effects of the earlier judgment did not render the claims to be not fully litigated." *Id.* The Court of Appeals affirmed the district court. *Id.* at 52. It rejected plaintiff's argument that his continued denial of access to the seaplane ramps created a new cause of action as "absurd" because it challenged the exact conduct the court determined was not illegal in the previous suit. *Id.* at 49. It further rejected plaintiff's argument that claim preclusion did not apply because he was alleging a cause of action for harm that occurred after the first judgment, he may prove different facts to support that cause of action. *Id.* at 50. The Court of Appeals found that argument "an incorrect statement of the law," and that it had "no merits to [plaintiff's] claim that he suffered a separate injury as the result of the continued losses from denial of access to the sea ramps." *Id.* at 50 (citing Restatement (Second) of Judgments § 25 cmt. b.).

In the instant matter, Exchange is complaining of the exact conduct that was previously included in *Beltz II* and *Ritz* – that Indemnity took excessive Management Fees under the Subscriber's Agreements by setting the rate at the full 25% allowable under the Agreements, it was detrimental to Exchange and the Subscribers by keeping funds from staying in the Exchange and by doing so, Indemnity breached its fiduciary duty to Exchange and the Subscribers.  That Exchange now limits the time frame to 2019 and 2020 in the State Court Action does not defeat claim preclusion, as the material facts alleged in *Beltz II*, *Ritz* and the State Court Action are identical.  Exchange and the Subscribers allege in each action that:

- Indemnity's Board is controlled by the Hirt Family and Indemnity and the Board have enriched shareholders by taking excessive Management Fees (State Court Action Compl. (ECF No. 57-1) at ¶¶ 37-47; 40-42; *Ritz* Compl. (ECF No. 57-2) at ¶¶ 33-38; 52, 74-77; *Beltz II* Compl. (ECF No. 57-3) at ¶¶ 48-51; 59, 84),

- Indemnity prevented money from remaining in the Exchange by setting the Management Fee at the maximum rate of 25% (State Court Action Compl. (ECF No. 57-1) at ¶ 75; *Ritz* Compl. (ECF No. 57-2) at ¶ 108; *Beltz II* Compl. (ECF No. 57-3) at ¶ 66),

- Indemnity and its Board have a conflict of interest in setting the Management Fee and acted for their own benefit over Exchange and its Subscribers (State Court Action Compl. (ECF No. 57-1) at ¶¶ 36, 48-57, 79-81; *Ritz* Compl. (ECF No. 57-2) at ¶¶ 5-6, 45-51; *Beltz II* Compl. (ECF No. 57-3) at ¶ 66), and

- This conflict serves as the basis for Indemnity's breach of fiduciary duty to Exchange and the Subscribers. (State Court Action Compl. (ECF No. 57-1) at ¶¶ 54, 76-90; *Ritz* Compl. (ECF No. 57-2) at ¶¶ 52-54, 103-11; *Beltz II* Compl. (ECF No. 57-3) at ¶¶ 66,

84, 122-31, 136-40).

Like in *Huck*, the gravamen of Exchange's State Court Action is the same as the earlier dismissed actions. That Exchange may have suffered additional damages in 2019 and 2020 following the *Beltz II* and *Ritz* decisions does not equate to a new cause of action where there are no "change of circumstances concerning material operative facts." *Huck on Behalf of Sea Air Shuttle Corp.*, 106 F.3d at 49. It remains that Indemnity's decision to set the Management Fee at 25% began in 2007 and that conduct was challenged in *Beltz II* and *Ritz*. Exchange's current challenge in the State Court Action relates to "maintaining" that rate at 25% in 2019 and 2020. State Court Action Compl. (ECF No. 57-1) at ¶¶ 60, 64 (alleging that Indemnity "agreed to **maintain** the current management fee rate paid to Erie Indemnity Company by Erie Insurance Exchange at 25 percent" in December 2019 and December 2020) (emphasis added). Therefore, Indemnity's decision to set the Management Fee at 25% in 2019 and 2020 is part of a series of connected transactions beginning with Indemnity's original decision to set the Management Fee at 25% and is based on the same cause of action as *Beltz II* and *Ritz*. Accordingly, Indemnity has established the "same cause of action" element of claim preclusion, and it is likely that Indemnity will succeed on the merits of its claim for preliminary injunction purposes.

b. Irreparable Harm

Although the Court of Appeals for the Third Circuit has not specifically held, several courts have found that a party suffers irreparable harm if it is required to relitigate issues in state court that have been already decided in federal court. *Se. Pennsylvania Transp. Auth. v. Pennsylvania Pub. Util. Comm'n*, 210 F. Supp. 2d 689, 726 (E.D. Pa. 2002), *aff'd sub nom. Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 342 F.3d 242 (3d Cir. 2003); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 667 (5th Cir. 2003); *In re Dublin Sec., Inc.*, 133 F.3d

377, 381 (6th Cir. 1997); *In re SDDS, Inc.*, 97 F.3d 1030, 1041 (8th Cir. 1996); *Daewoo Elecs. Corp. of Am. v. W. Auto Supply Co.*, 975 F.2d 474, 478 (8th Cir. 1992); *Ballenger v. Mobil Oil Corp.*, 138 F. App'x 615, 622 (5th Cir. 2005) (unpublished).  In this case, Indemnity will suffer irreparable harm by being forced to defend itself in state court on issues already decided in federal court and potentially being "denied the benefits of the judgments in its favor from this Court[,]" especially considering that "even a single state court might decline to accord preclusive effect" to the Court's prior judgments in *Beltz II* and *Ritz. Dow Agrosciences, LLC. v. Bates*, No. CIV.A. 5:01-CV-331-C, 2003 WL 22660741 at \*18; \*21 (N.D. Tex. Oct. 14, 2003).  Accordingly, Indemnity has established it will suffer irreparable harm if it is not granted an injunction.

c.  <u>Harm to Non-moving Party</u>

"While issuing an injunction in this case will foreclose the opportunity for [Exchange] to relitigate issues in the state court," this is not a "legitimate harm" that must be balanced in determining whether to issue an injunction. *In re SDDS, Inc.*, 97 F.3d at 1041.  Foreclosing Exchange from litigating in state court is not a legitimate harm where Exchange and the Subscribers have had several full and fair opportunities to litigate their claims in federal court. "[T]he rules of equity do not require that they be given a second bite at the apple in the state forum in order to obtain a more favorable result." *In re SDDS, Inc.*, 97 F.3d at 1041 (citing *Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 299 (1917)).  Accordingly, Indemnity has established that this factor weighs in favor of granting an injunction.

d.  <u>Public Interest</u>

Lastly, the public interest is served by granting an injunction here.  The public interest is served by precluding "parties from contesting matters that they have had a full and fair opportunity to litigate[,] protects their adversaries from the expense and vexation attending multiple lawsuits,

conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).  Accordingly, Indemnity has established that the public interest is served by granting its request for a preliminary injunction.

## V.      CONCLUSION

Based on the foregoing, Indemnity has demonstrated it is entitled to a preliminary injunction pursuant to the All Writs Act and its motion for preliminary injunction is GRANTED. An appropriate Order follows.

DATED this 28th day of February, 2023.

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge

cc:      All counsel of record via CM/ECF electronic filing